UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Newport News Division

UNITED STATES OF AMERICA       )
                               )
               v.              )        Case No. 4:26-cr-6
                               )
RACHEL LORANE PENDERGRAST,      )
                               )
        Defendant.             )

### DEFENDANT'S POSITION REGARDING SENTENCING FACTORS

How could this happen? How could a woman who lives for her children make choices that put them in harm's way? Before these events she was Vice-President of the Parents and Teachers Association. Well, the answers become apparent once you peel back the layers of the life of Rachel Lorane Pendergrast. It is a life that has been complicated by exposure to drug abuse, sexual trauma, and her own battle with alcoholism. None serve as excuses, but they provide context for how Rachel got here. Thankfully, though, her prosecution has served as a wake-up call and the way she has rebuilt her family and worked on her rehabilitation serves as proof.

Rachel has reviewed the Presentence Investigation Report ("PSR") and has no objections. And with this pleading, she states her position regarding the statutory sentencing factors.

### Compliance While Awaiting Trial and Sentencing

Initially, Rachel faced two misdemeanor charges of simple assault filed on August 20, 2025. *See* 4:25mj53, ECF No. 1. She had been interviewed for pretrial diversion, but consideration for that was revoked when she was arrested on December 4, 2025 for DUI and offenses relating to the neglect of her children. ECF No. 5. She was granted release on a personal recognizance bond with strict conditions, including supervision by the U.S. Probation Office, no alcohol consumption, and remote testing to confirm that she was not consuming any alcohol. *Id.* The Court also ordered

1

that the matter be reviewed in one week. *Id.* On December 11, 2025, the conditions were changed to include attendance of parenting classes and complying with her mental health providers. ECF Nos. 9, 10.

Mrs. Pendergrast has abided by the Court's conditions of release. *See* PSR ¶ 4.

### The Appropriate Sentence is Five (5) Days' Imprisonment

A minimum term of five (5) days' imprisonment is required for driving under the influence of alcohol with a blood alcohol level of at least 0.15 gram but not more than 0.20 gram or more per 210 liters of breath. Va. Code § 18.2-270(A)(i). Rachel's blood alcohol level was .18 gram per 210 liters of breath. PSR ¶ 6, subparagraph 10. The maximum term of imprisonment on this count is one (1) year. Neither of the other counts of conviction have any statutorily required term of imprisonment. The sentencing guidelines do not apply to the felony child neglect conviction which has a five-year maximum on the term of imprisonment. The advisory guideline range on the assault conviction is zero to six months' imprisonment and the maximum term is one (1) year.

Congress requires federal courts to impose the least amount of imprisonment necessary to accomplish the purposes of sentencing as stated in 18 U.S.C. § 3553(a). The sufficient-but-not-greater-than-necessary requirement is often called the "parsimony provision." This requirement is not just another factor to be considered along with the others in § 3553(a); rather, it sets an independent limit upon the sentence.

The defense asserts that the appropriate sentence is five days' imprisonment followed by two years of supervised release with six months of home detention and remote alcohol testing. For the reasons stated below, such a sentence satisfies the parsimony provision.

**The Nature and Circumstances of the Offense**

The offense conduct section of the PSR details the facts of Rachel's misconduct. During a June 17, 2025 argument in their home, Rachel hit and scratched her husband leaving scratch marks on his neck and shoulder. Several months later in early December, she drove while intoxicated with her one-year-old child in tow to pick up her five-year-old child from school. Rachel left her three-year-old child asleep alone at home but when she returned home, he was outside. Before her return, fortunately a neighbor saw the three-year-old crying and trying to cross the street. It was 48 degrees outside and the three-year-old was only wearing a diaper and a t-shirt.

**Acceptance of Responsibility**

Rachel does not dispute the bases of her convictions, and she acknowledges the seriousness of the offenses[1]. She accepted full responsibility at her guilty plea hearing. ECF No. 22. During her presentence interview, Rachel said that she "feels terrible for her actions" and noted that what she did "affects her on a daily basis." PSR ¶ 15.

**Rachel's Personal History and Characteristics**

From an outsider, Rachel's life may appear ordinary; perhaps even unremarkable. She spent most of her childhood enjoying a middle-class lifestyle, in the same home for 13 years. She had the luxury of attending preschool at a nearby church, her own bedroom to sleep in, and both parents under the same roof. But what an outsider would not know is that Rachel's life holds a series of traumatic events; events that have left her with deep, unhealed wounds. And while Rachel's story is filled with pockets of turbulence and poor choices, it is also a story of hope and redemption.

---

[1] *See* Exhibit 1 – Rachel's letter to the Court.

3

Born and raised in Michigan, Rachel's childhood was far from idyllic. Though her basic needs were met, the emotional temperature in the home was highly dysfunctional. The tension in the household kept Rachel on high alert as her parents worked long hours and contended with their own undiagnosed mental health struggles and substance abuse. Verbal abuse between Rachel's parents was common. Loud, aggressive, and threatening arguments between her parents often left Rachel and her brother scared and withdrawn. Simply stated, Rachel's norm was a household where emotional growth and safety was neither nurtured nor protected. It was fairly common for Rachel to see her parents abusing alcohol and illegal substances. It should not be surprising that Rachel has mirrored this behavior when life's stressors emerge. Despite the chaos behind closed doors, Rachel was a promising student and made good grades. Sadly, this changed when her parents divorced during her sophomore year of high school. Rachel's mother moved out and struggled as her own mental health symptoms accelerated. Rachel's father stayed in the home and dove deeper into his addiction. Rachel began skipping school and drinking. She bounced between her childhood home, her mother's new apartment, and sometimes stayed for weeks at a time with friends. Despite struggling with her own self-worth and confidence, Rachel developed a passion for writing, particularly poetry, and proved to be very talented. She found comfort in this creative outlet and immersed herself in a writing community called "The Neutral Zone" at 16. Tragically, in what should have been a safe and protective environment for a student to express herself, an adult mentor took advantage of Rachel's vulnerability and sexually assaulted her. Rachel did not talk about this rape for nearly two years.

By the age of 17 Rachel's self-worth took a nose-dive while her self-medicating soared. She began cutting herself and abusing substances. While she managed to graduate from high school, Rachel's ability to make good life choices as a young adult was severely altered, leading

4

to years of poor decisions involving older men and substance abuse. She attempted college but quit after one semester with little guidance and no clear plan for her future. On at least one occasion during this time, Rachel used cocaine with her father. That decision still haunts her today as her father passed away from a drug overdose in 2018. At times, Rachel becomes overwhelmed with guilt for contributing to his addiction. But she was the child then, not the parent.

Now, Rachel is the parent. And the guilt she carries every day for putting her children's lives in danger is crushing. It is also her greatest source of motivation. Today, Rachel has a deeper understanding of her addiction and her propensity to consume alcohol when life gets hard. To be clear, Rachel is not healed. She is sober, which is commendable, but sobriety is measured only through today. Tomorrow will be a new day with new challenges that may bring strong cravings. Thankfully, Rachel is keenly aware of the impact every decision will have, for her and her family,



moving forward. Knowing this, she has worked diligently to understand her addiction. She supports maintaining a healthy mind and understands that trauma focused therapy, not alcohol, is the only path towards healing. Rachel has an incredible network of support for her future[2]. She understands that she has four young children that need their mother healthy and sober, and she is determined to show them what lifelong recovery looks like. She has re-engaged in therapy. She has graduated from the Farley Center's Intensive Out-Patient Treatment and attends AA meetings weekly. *See* PSR ¶ 92. She has completed a parenting class. PSR ¶ 58. Her case with Child Protective Services has been closed. PSR ¶ 92. She and her husband are actively involved in

---

[2] *See* Collective Exhibit 2 – letters of support.

marriage counseling. Rachel has also found a compatible and inspiring sponsor she speaks with daily. This sponsor is very proud of Rachel's accomplishments but maybe more importantly, has helped Rachel look into the mirror and feel proud of herself.

### The Requested Sentence Reflects the Seriousness of the Offense, Promotes Respect for the Law, and Provides Just Punishment

The felony conviction comes with significant collateral consequences for Rachel. She will lose several valuable rights she holds dear, including the right to vote, serve in public office, and possessing a firearm. The felony conviction is an inescapable brand that will make Rachel's life more difficult, especially because it involves her having exposed her children to serious potential danger.

A long term of incarceration would have additional collateral consequences. In his letter to the Court, Rachel's husband wrote, "With Rachel away I will likely lose my job in the Army as I will be a single parent with a small support system here [in Virginia] and we will have to relocate back to Michigan." *See* Exh. 2 at p. 15.

Though the requested sentence acknowledges an adherence to the state statute and the terms of the plea agreement, an argument exists for an alternative sentence. Home detention as a substitute for imprisonment is permissible under United States Sentencing Guidelines ("U.S.S.G.") § 5C1.1(e)(3) and the applicable commentary, which states that one day of home detention may serve as a substitute for one day of imprisonment. It does not offend Virginia's mandatory minimum proscription because "imposition of a sentence with the U.S. Sentencing Guidelines under the Assimilative Crimes Act 'does not encompass every incident of a state's sentencing policy.'" *United States v. Montigue*, 357 F.Supp. 2d 939, 941 (E.D. Va. 2005) (internal citation omitted). Rather, imposition of a prison term that falls below the mandatory minimum required by the state statute is also permissible because "[a] federal judge, like his state counterpart, has

6

discretion to impose a sentence within the state statutory limits." *United States v. Harris*, 27 F.3d 111, 115 (4th Cir. 1994). In *Montigue*, the defendant pleaded guilty to DUI, his blood alcohol level was 0.22 gram per 210 liters of breath, and he faced a mandatory minimum term of 30 days in jail. *Id.* at 940. Considering Montigue's "needs for effective correctional treatment include[d] his continued employment" and ability to "pay the mandatory fine," this Court imposed (in part) 60 days' imprisonment with 50 of those days to be served in home detention. *Id.* at 942-943. Rachel's need for continued mental health and substance abuse treatment, as detailed in Dr. Bartlett's report of her forensic evaluation of Rachel, provides ample support for the requested sentence of minimal (if any) incarceration[3].

### The Requested Sentence Will Afford Adequate Deterrence & Protect the Public

A sentence of five (5) days' imprisonment is more than sufficient to protect the public from Rachel. Her pretrial compliance suggests that she has already been deterred from drinking alcohol. A longer sentence is not required for either specific or general deterrence since the length of a particular sentence has at most a limited impact on crime rates or recidivism rates. Research has consistently shown that while the certainty of being caught and punished has a deterrent effect, "increases in severity of punishments do not yield significant (if any) marginal deterrent effects." Michael Tonry, *Purposes and Functions of Sentencing*, 34 Crime & Just. 1, 28 (2006). Similarly, Rachel's adherence to the Court's rules suggests that any remaining danger she might pose to the public is effectively managed through federal supervision.

### Medical Care

Rachel's most pressing physical need is continued prenatal care in a non-carceral environment. A close second is the need to continue her lifelong need for trauma-based therapy

---

[3] A copy of the report will be filed under seal as Exhibit 3.

and substance abuse counseling. The general public is best protected when Rachel's mental health is stable.

**<u>Conclusion</u>**

The defense respectfully requests that this Court impose a sentence of five days' imprisonment followed by two years of supervised release with six months of home detention and remote alcohol testing. Because she has three very young children and is expecting a fourth in September, the defense further requests that Rachel be allowed to serve the term of imprisonment intermittently, as described in U.S.S.G § 5C1.1(e)(1). Lastly, the defense requests that Rachel be allowed to self-report to the designated facility on a date that comes after June 16, 2026 so she can attend a prenatal appointment scheduled for that date. The requested sentence would be sufficient but not greater than necessary to fulfill the purposes of sentencing set forth in 18 U.S.C. § 3553(a).

True justice will heal and not harm. Incarceration risks derailing the months of progress Rachel has made.

Respectfully submitted,

RACHEL LORANE PENDERGRAST

By: _____/s/_____

Keith Loren Kimball
Virginia State Bar No. 31046

Sean Carlton Mitchell
Virginia State Bar No. 90922

Office of the Federal Public Defender
500 East Main Street, Suite 500
Norfolk, Virginia 23510
Telephone: (757) 457-0800
Telefax: (757) 457-0880
Email: keith_kimball@fd.org
        sean_mitchell@fd.org

<u>Attorneys for Rachel Lorane Pendergrast</u>

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 1st day of June 2026, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to all counsel of record.

I further certify that I will send the document by electronic mail to the following non-filer:

> Kalyn Monreal
> United States Probation Officer
> 600 Granby Street, Suite 230
> Norfolk, Virginia 2350
> Email address:  kalyn_monreal@vaep.uscourts.gov

_____/s/_____
Keith Loren Kimball
Virginia State Bar No. 31046

Sean Carlton Mitchell
Virginia State Bar No. 90922

Office of the Federal Public Defender
500 East Main Street, Suite 500
Norfolk, Virginia 23510
Telephone: (757) 457-0800
Telefax: (757) 457-0880
Email: keith_kimball@fd.org
      sean_mitchell@fd.org

<u>Attorneys for Rachel Lorane Pendergrast</u>
